# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Criminal Case No. 19-cr-227-CMA

UNITED STATES OF AMERICA,

      Plaintiff,

v.

2.  LUIS FABIAN ORTIZ,

      Defendant.

---

## PLEA AGREEMENT

---

The United States of America, by and through Andrea Surratt, Assistant United States Attorney, and defendant, LUIS FABIAN ORTIZ, personally and through counsel, Dana Casper, submit the following Plea Agreement and Statement of Facts Relevant to Sentencing.

## I.  PLEA AGREEMENT

This plea is pursuant to Fed. R. Crim. P. 11(c)(1)(A).

**A.**      **Defendant's Obligations**

      **1.**      **Count of Conviction**

The defendant agrees to plead guilty to Count One the Indictment, which charges a violation of 21 U.S.C. §§ 841(b)(1)(A) and 846 (conspiracy to distribute and possess with intent to distribute 500 grams and more of methamphetamine).

The defendant also agrees to admit the forfeiture allegation contained in the Indictment.



COURT EXHIBIT
1

2.      **Waiver of Appeal**: The defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed.  Understanding this and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following three criteria:  (1) the sentence imposed exceeds the maximum penalty provided in the statute of conviction, (2) the sentence exceeds the advisory Guidelines range as calculated based on offense level 29, or (3) the Government appeals the sentence imposed.  If any of these three criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives his right to challenge this prosecution, conviction, or sentence and/or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255.  This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing Guidelines or sentencing statute; (2) the defendant was deprived of the effective assistance of counsel; or (3) the defendant was prejudiced by prosecutorial misconduct.  Should the plea of guilty be vacated on the motion of the defendant, the government may, in its sole discretion, move to reinstate any or all of the counts dismissed pursuant to this agreement.

3.      **Forfeiture of Assets**

The defendant agrees to admit the forfeiture allegation contained in the

Indictment.

**B.     Government's Obligations:**

1.     **Sentencing Recommendation**: In exchange for the defendant's plea of guilty, the Government agrees to recommend the Court give the defendant full credit for acceptance of responsibility, unless the defendant engages in conduct that qualifies for the obstruction of justice enhancement under U.S.S.G. §§ 3C1.1 and 3E1.1, comment (note 4) between the time of the guilty plea and sentencing.  The Government will also recommend a sentence at or below the bottom of the Guideline range determined by the Court.

2.     **Dismissal of Count:**  In exchange for the defendant's plea of guilty, the Government also agrees that, at the time of sentencing, it will move to dismiss Count Three of the Indictment as to the defendant, LUIS FABIAN ORTIZ.

## II. <u>STATUTORY PENALTIES</u>

The statutory penalty for the offense charged in Count One of the Indictment is not less than 10 years but not more than life imprisonment; a $10,000,000 fine; not less than 5 years supervised release or more than life supervised release; and a $100 special assessment fee.

If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional supervision.

## III. <u>COLLATERAL CONSEQUENCES</u>

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury.  If the defendant is

an alien, the conviction may cause the defendant to be deported and removed from the United States or confined indefinitely if there is no country to which the defendant may be deported, to be denied admission to the United States in the future, and to be denied citizenship.

## IV.  ELEMENTS OF THE OFFENSE

The parties agree that the elements of the offense to which the defendant will plead guilty are as follows:

Count One:

*First*: two or more people agreed to violate federal drug laws;

*Second*: the defendant knew the essential objective of the conspiracy;

*Third*: the defendant knowingly and voluntarily involved himself in the conspiracy;

*Fourth*: there was interdependence among members of the conspiracy; and

*Fifth*: the conspiracy involved at least 500 grams of mixtures and substances containing a detectable amount of methamphetamine.

## V.  STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory Guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations.  To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

4

The statement of facts herein does not preclude either party from presenting and arguing, for sentencing purposes, additional facts or factors not included herein which do not contradict the facts to which the parties have stipulated and which are relevant to the Guideline computation under § 1B1.3, or to the sentencing factors found in § 1B1.4 and 18 U.S.C. § 3553(a), or to this Court's overall sentencing decision.  In "determining the factual basis for the sentence, the Court will consider the stipulation of the parties, together with the results of the presentence investigation, and any other relevant information."  U.S.S.G. § 6B1.4 Comm.

The parties stipulate to the following facts:

<u>April 25, 2019 sale of methamphetamine</u>

Prior to Ortiz and co-defendant Craig Pearson's April 25, 2019 sale of methamphetamine to a DEA agent acting in an undercover capacity UC (the "UC"), Pearson and the UC discussed on Facebook Pearson's ability to get a pound of methamphetamine for the UC. On April 24, Pearson told the UC that his supplier went out of town, but "my other friend has it too" but for $3,400 per pound instead of $3,300. The UC agreed to the deal and agreed to meet at a particular location on April 25, 2019 in order to complete the deal.

On April 25, 2019, Pearson met the UC in a residential parking lot in Colorado Springs.  Pearson was driving and Ortiz was in the passenger seat of Pearson's truck. Another female passenger was in the vehicle as well.  Pearson and the UC engaged in conversation, including about Pearson brokering a deal with additional customers from out of state.  During this conversation, the UC asked Pearson if Pearson could get three additional ounces of methamphetamine for a total of one pound and three

ounces (instead of just a pound).  Pearson expressed that he was unsure if his source could do that.  He said he couldn't guarantee it and he would have to check and said "we'll see."

Once at the specified location, Pearson asked the UC to follow him to another location which he did.  The UC gave Pearson $4,000 and Pearson and Ortiz drove to a nearby apartment complex to obtain the methamphetamine, leaving the female passenger as "collateral" to assure the UC that Pearson and Ortiz would return with the methamphetamine.  Agents who were conducting surveillance in the area saw Ortiz walk up to a particular apartment (the "Apartment") and return to the truck carrying a plastic bag. Pearson and Ortiz returned to where the UC was waiting and provided the plastic bag to the UC.  Upon inspecting the plastic bag, the UC confirmed it contained methamphetamine Upon their return, the UC asked Pearson if they were able to get the additional amount as requested.  Pearson told the UC that Ortiz was able to get the additional requested amount.  Pearson and Ortiz were arrested. The methamphetamine was tested by a DEA laboratory and was 516.6 grams of 99% (+/- 4%) pure methamphetamine.  Ortiz admits that he distributed this methamphetamine.

Meanwhile, agents conducted surveillance on the Apartment.  During this surveillance, agents observed an individual unknown to Mr. Ortiz in a Nissan Altima arrive at and then, 10 minutes later, leave the apartment concealing something in his jacket.  This car was stopped and searched and agents located 899.3 grams of 99% pure methamphetamine concealed in his jacket.

Agents who were conducting surveillance of the Apartment observed co-defendant Luis Rene Zavala-Acosta leaving the Apartment and arrested him.   When Zavala-Acosta was arrested, he had a key to the Apartment on his person.

The Apartment was subsequently searched pursuant to a search warrant. During execution of the search warrant, co-defendant Jesus Padilla-Echeverria was found alone in the apartment.   Agents subsequently recovered  2,711.6 grams of heroin and 3,143.7 grams of 99% pure methamphetamine in the Apartment.  Padilla-Echeverria was arrested in the Apartment.  Zavala-Acosta's ID was located in the Apartment in a small closet with some of the recovered drugs.

## VI.  ADVISORY GUIDELINE COMPUTATION

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory Guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory Guideline range called for by the United States Sentencing Guidelines.  To the extent that the parties disagree about the Guideline computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is only an estimate.  The parties understand that the government has an independent obligation to assist the Court in making an accurate determination of the correct guideline range.  To that end, the government may make legal or factual arguments that affect the estimate below.

Offense Level:

A.      The Guideline application to Count One is U.S.S.G. § 2D1.1.

B.      It is the Government's position that, including relevant conduct and what was reasonably foreseeable to the defendant as part of the conspiracy, the defendant is responsible for 4,559.6 grams of 99% pure methamphetamine, as follows:

- 516.6 grams of methamphetamine sold to the UC on April 25, 2019
- 899.3 grams of methamphetamine that was found in the jacket of the driver of the Altima
- 3,143.7 grams of methamphetamine recovered from the Apartment on April 25, 2019 during execution of a search warrant

It is the Government's view that, pursuant to U.S.S.G. § 2D1.1(c)(1), because the defendant is responsible for 4.5 kilograms or more of "ice," his base offense level for Count One is 38.

C.      It is the defendant's position that the methamphetamine found on someone leaving the apartment and found in the apartment does not satisfy the requirements of relevant conduct, as it relates to the defendant.   It is the defendant's position that he is responsible under the requirements of relevant conduct for, at most, the 516.6 grams sold to the UC on April 25.  Pursuant to U.S.S.G. § 2D1.1(c)(3), because the defendant is responsible for at least 500 grams but less than 1.5 kilograms of "ice," it is the defendant's view that his base offense level for Count One is 34.

D.      The parties agree that the defendant meets the criteria in U.S.S.G. § 2D1.1(b)(18) and is therefore eligible for a 2-level reduction in his base offense level.

E.      The defendant should receive a decrease in the offense level by -2 based upon his acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a).  The defendant

should also receive a decrease in the offense level by -1 for timely notifying the government of his intent to plead guilty pursuant to U.S.S.G. § 3E1.1(b).  At sentencing, the government will make the appropriate motion for the one-point reduction.

      F.      Accordingly, in the Government's view, the total offense level is 33, and in the defendant's view it is 29.

      Criminal History:

      G.      The parties acknowledge and agree that the estimation regarding the defendant's criminal history is tentative.  The defendant acknowledges that the criminal history will be further investigated by the United States Probation Department and ultimately determined by the Court.  The defendant further acknowledges that any additional facts regarding the criminal history can greatly affect the final Guideline range and result in a longer term of imprisonment.  Based upon the facts known at this time regarding the defendant's criminal history, the parties believe that the defendant falls within Criminal History Category ("CHC") III.  § 4A1.1.

      Guidelines Range:

      H.      For Count One, the Guideline range resulting from the estimated offense level of 33 and the estimated criminal history category III is 168-210 months imprisonment.  The Guideline range resulting from an estimated offense level of 29 and criminal history category III is 108-135 months  imprisonment.  Count One carries a mandatory minimum sentence of 120 months, except that the parties agree that the defendant meets the criteria in 18 U.S.C. § 3553(f) and may be sentenced without regard to the mandatory minimum.

The imprisonment range at offense level 33 could be from 135 months (the bottom of CHC I) to 293 months (the top of CHC VI).  The imprisonment range at offense level 29 could be from 87 months (the bottom of CHC I, without regard to the mandatory minimum) to 188 months (the top of CHC VI).

I.      Pursuant to U.S.S.G. § 5E1.2, at an offense level of 33, the fine range for would be $35,000 to $10,000,000, and at an offense level of 29 it would be $30,000 to $10,000,0000, plus applicable interest and penalties.

The parties understand that although the Court will consider the parties' estimate, the Court must make its own determination of the Guideline range. In doing so, the Court is not bound by the position of any party.

No estimate by the parties regarding the Guideline range precludes either party from asking the Court, within the overall context of the Guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties regarding the guideline range precludes either party from asking the Court to vary entirely from the advisory Guidelines and to impose a non-guideline sentence based on other 18 U.S.C. § 3553 factors.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory

guideline range, or above the advisory guideline range up to and including

imprisonment for the statutory maximum term, regardless of any computation or position

of any party on any 18 U.S.C. § 3553 factor.

## VIII.  **ENTIRE AGREEMENT**

This document states the parties' entire agreement.  There are no other

promises, agreements, side agreements, terms, conditions, understandings or

assurances, express or implied.  In entering this agreement, neither the government nor

the defendant have relied, or are relying, on any terms, promises, conditions or

assurances not expressly stated in this agreement.


Date: _10/1/19_          _____
                          Luis Fabian Ortiz
                          Defendant

Date: _10/1/19_          _____
                          Dana Casper
                          Attorney for Defendant

Date: _10/1/19_          _____
                          Andrea Surratt
                          Assistant U.S. Attorney